Your Honor, first case is Inri Orlansky, Christopher Burke for appellants and Ramir Hernandez for appellate. All right, good morning. Mr. Burke, would you like to reserve any time? Yes, five minutes, please. All right. Good morning. Christopher Burke for the appellant. There are three reasons why the bankruptcy court decision should be reversed. First, adding pre-petition fees to a post-petition mortgage statement violated the stay. Second, these were not voluntary payments. And third, there was a second violation by a creditor holding on to the money for more than six months. Now in terms of adding the statements or adding fees to the post-petition mortgage statements, these violate 362A1 and A6. They're attempts to recover pre-petition fees outside of the bankruptcy court's purview. And that by itself violated the stay. Counsel, let me just ask you, though, you're referring, that appears in two different forms. One is the 3,002.1 statement and one is the statement that was sent to the client. You're not referring to the 3,002.1 filing as being violative? Correct. Okay. Yes. It's just adding those statements sent directly to the debtors. Now these weren't voluntary payments. When we look at it, a voluntary payment is if somebody wants to add $100 each month. Or maybe they pay every two weeks instead of once a month. Or maybe they get a tax refund and they send a lump sum. Here they were charged $950 and they paid $950 over two months. Now if we look at the statements for instance, exhibit page 233, it says billing statement at the top. It's two pages. The second page, unfortunately, it's 272 and 273. But it says billing at the top. It has the word payment listed 12 times on the first page, 19 times on the second page. So over 30 times the word payment is listed. Debtors don't know what this means. They waited. They got these statements. They waited a few months. They thought, well, maybe it would be taken off. Then they paid them, unbeknownst to me. It took months later before it... Mr. Burke, let me ask a question. Would it have been different if the $950 had not been listed in the present amount due section and had been listed down in the part where they said, you know, your bankruptcy trustee is making the payments that they're supposed to make? Would it have been different if that amount had been listed there? Would that have been a state violation? I will say that the fact that it was listed on amount due, the $1950 roughly, that's what violated the state. I also believe that was in the payment coupon, but they didn't have any because they sent them in. It just says detach and make payment. So grudgingly, I would say the fact that it says amount due, it's in there, that violated the state. And then the retention of the funds. They held onto it for six months until I started objecting to the proof of claim. And I don't know at what point they realized I was going to file a motion for contempt. And so they quickly said, oh, well, we withdrew everything and we're going to send them back the money. Well, that doesn't negate what they did. And so I would ask that the bankruptcy court's decision be reversed and that the state was in two aspects. Now, if there's no further questions, I'm not going to continue to beat this down. So I guess the only thing I wonder about is after they made the payment, in assuming that these were funds that they used that were post-petition earnings that would be property of the estate, does the character of the funds change when they become property owned by the creditor? I'm not sure I understand. Does the character... So do they remain property of the estate even in the creditor's hands once they've been deposited into a creditor's account and then the funds are, they're not identifiable property any longer. They're not like the car that they possessed or the something piece that they repossessed. They actually are fungible assets that are now part of the larger bank account owned by the creditor. I believe it's still part of their estate. It's either part of the debtor's estate or the bankruptcy estate. And the retention of those for more than half a year was the second violation under 362.83. So the damages you thought were the $950, were there other damages because that $950 was refunded before you filed the motion? Well, there were attorney fees in filing this and there was emotional distress that they went through. Plus they had to, they don't have access, they're elderly and sickly. They don't have access to the internet. So they come in, make copies, give me their documents to show me what happened. So they had gas expense. They had some other intangible expenses that go along with dealing with their attorney. So you're asking us to reverse and remand for her, the bankruptcy court, to conduct a hearing to allow you to present evidence with regard to the actual punitive and attorney's fees damages that you think your client incurred. Exactly. And just as a side note, some other attorneys across the country have asked me if I've seen this because they've run into it. And it's a cottage industry. When a debtor in a 13 isn't behind, what they're doing is manufacturing fees to file a proof of claim and then adding $1,000 in fees. It only takes 1,000 cases for them to pocket $1,000,000. And then the two people who object, me and maybe somebody else, right away it's don't look behind the curtain. Here, we gave the money back. We didn't do anything wrong. But it's really, it's a game they're playing. And so I would ask the court, as Judge Gans said, to reverse and remand it to have an evidentiary hearing on damages. So the code, though, anticipates that there could be these kinds of either charges related to the loan, increases in interest rate or some other term, and or a separate section that deals with fees and allows the debtor, if they don't believe it's fair or reasonable, to object. And that's not, I mean, that's the way the code's set up, right? So you can't, I agree with the cottage industry kind of concept, but it anticipates that that would be a problem and debtors have the right then to seek relief. Right. We can object under 3002E, but I pointed out why it wouldn't even apply in this case. But the point is, that's not the problem. Putting it in, as much as I dislike it because they're manufactured, it was adding it to the statement that violated the state. If there's no further questions. All right. Let me just, I just want to kind of hone in on this issue a little bit, Mr. Burke, because I want to make sure I understand it. So I think the case law says that simply sending a mortgage statement, you know, for informational purposes, and it states that on the mortgage statement, that in and of itself is not violative of the automatic stay. There has to be more to constitute the harassment or coercion or whatever. And you were saying, is your point then that putting this, you know, a post petition amount of 950, alleged post petition amount of 950, in the part of the statement that says this is the amount due, that that constitutes the something more. Correct. And saying coercion or harassment, it's difficult to define. But I can tell you in this situation, unbeknownst to me, when they got it, they thought it was going to go away. When it didn't, they paid it. I don't know how much more coercion to be defined, except the fact that they ended up paying it. I only found out months later because they were worried they had trouble making their 13 payment. I asked why. And they said, well, we paid those attorney's fees and that's what started the process. What attorney's fees? And that's how we got here. But Mr. Burke, you're not asking us to, to issue a decision that would be particular to your clients, but wouldn't be applicable in general to most people. And that's what I think Judge Brand's trying to point out is it has to be a rule that says if you include it in this location or it's the net, it has the course of effect. Not that some people might interpret it in a way that they feel compelled and therefore that rule just applies in this particular matter and no other case. Right. Well, yeah. I mean, obviously I want it to apply in all cases, but I, the case law says these are fact intensive. And so ultimately determine if it's coercion or harassment, you have to have an evidentiary hearing. But I, the simple fact that they made the amount due 1950 instead of a thousand. And you didn't get your evidentiary hearing, right? Or did you? No, we never had an evidentiary hearing. All right. And that was the point with the court saying it was a voluntary payment. The only evidence was a declaration by the debtor that said, we're afraid to lose our house. That's why we paid it. But we never got to the point. The judge took it under submission and then summarily shot it down. Right. So that was error in your view that you didn't even get to the evidentiary hearing? If the court obviously found the state was violated, we would have had an evidentiary hearing, but because the court short changed it, we never, there's nothing else on this reserve. All right. Thank you. Thank you. All right. Mr. Hernandez. Good morning, your honors, and may it please the court. My name is Ramir Hernandez and I represent Quicken Loans LLC, also known as Rocket Mortgage. Today, this court will get to determine whether a creditor can be sanctioned for violating the automatic stay for following the bankruptcy rules of procedure. The answer is obviously no. This is even more obvious in light of the abuse of discretion standard this court applies to motions for contempt or sanctions. The bankruptcy court did not abuse its discretion in denying the motion for contempt for the following reasons. First, debtors in Chapter 13 are entitled to know what fees they are being charged in order to formulate a confirmable plan. Here, Rocket followed proper procedures under FRBP 3002.1c by filing the fee notice prior to adding the $950 to the debtor's monthly mortgage statement. I've never seen that. Is that what you do? I mean, I thought that the $950 should have come as part of the plan payment. And if you add it to the mortgage statement, doesn't that kind of harm their ability to make their payments under their plan anyway? That's what Mr. Burke just told us. Your honor, this was not a conduit PAN payment. This was a direct to the plan payment directly to the creditor. So there was no plan payment. And there were no arrears.  That's correct, your honor. All right. Mr. Hernandez, you said at the start, this is whether a creditor should be sanctioned. Is that really what's before us? Or are we being asked to give the bankruptcy judge here the ability to remand this case and have the bankruptcy judge to decide whether someone should be sanctioned, whether there should be a hearing? Well, I think the way I framed it in the lower court, your honor, was this is a matter of law. As a matter of law, this could not per se be a violation of the automatic state because the issue here was whether we not violated 3002.1c. But isn't the issue really more about the mortgage statement than 3002.1c? Nobody argues, Mr. Burke doesn't argue that you violated 3002.1c. But 3002.1c is the mechanism that allowed us to add those fees to the mortgage statement. Mr. Burke received that mortgage, that 3002.1c filing. He got the post petition fee notice. At that point, if he had any issue with the addition of those fees, he could have objected at that time. And he did not object at that time. He decided to let it sit. And then his clients let it sit for several months, paid it, and then didn't tell him that they paid it until several months later. So the issue here, your honor, is one of notice and responding to notice. This is how the bankruptcy, this is standard black letter bankruptcy procedure. This is what happens. You have an additional fee that you want to add to the mortgage statement. You file the PPFN. The opportunity and due process cause has been allowed to object to it. And you either object or you pay it. If you don't object to it and you pay it, you voluntarily paid that payment without any issues. But then several months later, they come around and say, oh no, we shouldn't have paid that. Well, your honor, you talk about cottage industry and manufacturing claims. That's a perfect example of a debtor trying to manufacture a claim against the creditor there. And that's just not right. And that's just not how the bankruptcy system works. And second, your honor, the debtors failed to show that Rocket improperly held onto property of the estate when it collected attorney's fees that debtor voluntarily paid, especially if Rocket was entitled to such fees under the terms of the noted deed of trust. And finally, your honor, this is critical. The debtors have provided no evidence that Rocket coerced or harassed debtors. Neither the fee notice nor the monthly notice included any harassing language or threats. As this court pointed out, there was the standard disclaimer bankruptcy language included in the monthly payment notice that it said specifically, you are in a bankruptcy and this is not an attempt to collect the debt. Your honor, I would like this court to note that this case has become a moving target. What started as a rejection to a proof of claim has morphed into a violation motion for violation of the automatic stay based on the creditor improperly charging attorney's related to the loan because the loan was current and not in arrears. Now it has become a case of improper notice raised for the first time in the reply brief. The debtor claims that we did not mail the post petition fee notice directly to the debtor. That argument was not raised before the lower court. It was not raised in the opening brief and was only raised for the first time in the reply brief. And this court should note, as Mr. Burke pointed out, that Rocket attempted to resolve this dispute amicably on multiple occasions. Instead of accepting this peace offering, debtors doubled down on their attempt to collect damages from Rocket. This court should only consider the record before it and not be swayed by surprise arguments that debtors kept from the lower court and this court in briefing to raise later at the opportune time as they are not in the record for review. So counsel, can I just ask, um, once you made the 3,002.1 request under subsection C to add the attorney's fees, does Rocket take the position that at that point they had a right to demand payment through this statement that was made? In other words, it's allowed until it's subjected to or until such time as the court disallows it. And if they pay it, that's fine. Or if we didn't, we have the right to demand it. That's correct, Your Honor, because 3,002.1c says that a creditor is allowed to serve a notice itemizing all fees or expenses or charges that were incurred in connection with the claim after the bankruptcy case was filed and that the holder asserts are recoverable against the debtor or against the debtor's principal residence. That's under section 3,002.1, but the statement that you send is not that 3,002.1. It's a separate statement that you send to the debtor, which now includes a fee that hasn't yet been allowed or approved by the court, nor has the time for objection run yet. Correct? Well, there is no time for objection. There was a year. A year? Okay. I'm sorry. You're right. You're right. There's a year. Right. But in that time, they could have objected it before they paid it. There was no threat of foreclosure. There was no threat of harassment. There was no statement that said we were going to go after you. And that's the point you're trying to make is that in addition to a statement, there has to be other action. Why would you include it in the amount that's owed in that section rather than in another section that says, you know, we'll wait until there's a determination made by the court or we've asserted that this claim is out there through 3,002.1 and we've added it to this statement. So until there's a resolution, you know, we're just sort of giving this for informational purposes. I mean, that doesn't come clear, does it? I think it does, Your Honor. And I don't know of any mechanism where that fee would be approved other than charging it and then objecting it to it. Right? 3,002.1 says you can itemize it, but there's no process after that for us to get it affirmed or approved by the court that I'm aware of. All I know is we charge it and then they have the right to object to it. So I don't think I understand that it's I understand the complication here. The complication is you've got the 3,002.1 statement, which everybody agrees is valid, but then you have the actual charge. Then how do we collect against it? Right. Right. There's no mechanism for us to collect it. I mean, I guess if we could file an amended proof of claim and then they could argue it over the proof of claim objection, or it could be included in the plan. And if it's not included in the plan, we could object to that. Right. Right. So I guess there are other ways that it could be done. But ultimately, I think the mechanism that exists is, as the court pointed out, is to just file an objection to that actual post-petition fee notice, which, by the way, has happened multiple times. I've had this issue before. Many times I've had other attorneys file these objections to post-petition fee notices, and we usually resolve it one way or the other. Right. And usually it gets resolved with either a discount or we waive the fee. We decided in this instance to waive the fee because it just was not worth fighting over. We acted in good faith. How could we violate the automatic stay when we're going through a process of trying to resolve a dispute over a claim, a post-petition fee notice, and a charge that we made pursuant to the rules when that charge could have been challenged at any time? If you look at all the case law that Detter presents, those are all different instances that are easily distinguishable here. Most of the case law that Detter talks about are cases involving where the debtor did not want to receive monthly statements. Well, in this case, it's conceded that the debtor wanted to receive monthly statements. There's another case that Detter cites, too, that refers to adding those fees to the proof of claim. We did not add those fees to the proof of claim. We did it under a separately filed post-petition fee notice. So I just don't see how it could rise to the standard of the violation of the automatic stay. And, Your Honor, in Brosio, which is a case that this court decided, you determined, this court determined that $425 for a proof of claim filing was a valid reasonable fee. Now the debtors are coming up here trying to argue that these fees are completely unreasonable that we have in a cottage industry. Well, how can we have a cottage industry when this court has allowed fees similar to ours to be charged? And the reason Rocket withdrew those fees was because it didn't want, it made the business decision that it just did not feel it was worth it to fight over this fee amount. And, Your Honor, I want to talk briefly, if I have a chance here, about the issue of retaining attorney's fees. Debtors argue that Rocket Mortgage violated the automatic stay by willfully withholding the property of the state by retaining the $950 in attorney's fees for seven months. Now you all know what property of the state is. It consists of the property of the debtor at the commencement of the case or any interest in the property that the estate acquires after the commencement of the case. And I think the City of Chicago v. Fulton case in the Supreme Court is instructive here because there the United States Supreme Court held that mere retention of estate property after the filing of a bankruptcy petition does not violate 362.83 of the Bankruptcy Code. And in this instance, the debtors allege nothing more than mere retention of the $950 as basis for violating the automatic stay. And as this court pointed out, it's not like we were holding on to a car that the debtor demanded be returned. And in fact, Mr. Burks and his clients demanded that we return the $950, which is what we did. Right? So I don't understand how that rises to the level of violating the automatic stay. But also the case that we cited in our briefing from Texas, in Ray Canoe, the court there said upon receipt of a payment by the debtors from the creditor, such payments are no longer property of the estate, but become property of the creditor. And in this case, a voluntary payment was made to the creditor to pay the $950. The creditors, the debtors claim they were confused. They were represented by counsel. When they saw that fee charged, they should have immediately called Mr. Burke and asked him what was going on. They did not. They waited several months. And then after they waited several months after paying it, then they come and say, oh, those fees should not have been charged. Well, your honor, they had the opportunity at that time represented by counsel to object to the fees that they paid. And they didn't pay them immediately, your honor. They waited several months before they paid them. At no time did Rocket threaten foreclosure. Rocket did not seek relief from the automatic stay. Rocket took no aggressive, affirmative action here. And I think that's a key distinction to be made between all the other cases, is that Rocket here did not act in a manner that was threatening, coercive, or harassing. And lastly, your honors, let me ask you a question. When you put the $950, when Rocket put that in the billing statement where they put it, so did they expect that the debtor would pay that? Why did they put it there? Why did they put it in that, you know, payment due spot? Well, because it was a payment that was charged as a result of the filing of the bankruptcy. And it was the charge that they were expecting. They were expecting the debtor to pay it. Yes. That's not disputed here, your honor. The question is whether or not that violates the automatic stay. It might violate 3002-1C. That's an issue for Mr. Burke and his client to file an objection to. But there's no case law or anything which suggests that it would violate, just that mere adding to that statement would violate the automatic stay. In fact, Imre Zautau, which is a decision that this court decided, said the exact opposite. It said that just merely sending a statement with the exact same disclaimer language in our case does not violate the automatic stay. Without more. Without more. Correct, your honor. And I just, there's no more here. And that's a distinction I want to make. This court has to find, when it's reviewing Judge Cox's findings of fact, has to find clear error in Judge Cox's findings of facts. And there is nothing in the record to indicate clear error. And this court has to give deference to Judge Cox's findings of facts on that ground. And there's just nothing more here. The only thing he argues is that they had, they felt some sort of emotional distress. But those were very generic allegations of emotional distress that did not include, like you pointed out, Judge Gantt, more that would raise to the level to make this a violation of the automatic stay. But I don't really think we get there because I just don't see, in Ms. Rockett's position, that this type of violation rises to the level of the violation of the automatic stay. And if you look at Brossio, this charge, like I said before, is a valid charge that this court has allowed in the past. So just to make sure I understand, your argument is, you filed the 3002.1 statement, therefore you can add this to the billing statement. It is a demand for payment. But the demand for payment is consistent with Volcay's law, that as long as you don't take any other action to collect it, it's okay. It shouldn't be a violation of the automatic stay for you to demand payment, not coercively, not harassingly, but to notify and to pursue. That's correct, Your Honor. And I think because it was in the bankruptcy process, that allowed the debtor the opportunity to object and to make any record that they wanted to regarding those fees, which he did. He filed an objection, right? We resolved that objection. That should have been the end of the story. Now he wants to take it one step further. So what incentive do I have as a creditor to try to negotiate in good faith, right? Under the debtor's world, we would, anytime I do anything bad and it's violated the automatic stay, I have no recourse. I just might as well throw myself at the mercy of the court and say, oh, please don't charge me thousands of dollars in attorney's fees. That's just not the way the process works, Your Honor. And I see my time is up and I thank you for your time today. Thank you. Just a few points. Creditor is still conflating rule 3002 and the monthly statements. Second Fulton had to do with a car that was repossessed, pre-petition has nothing to do with this case. Third, they said that we let it sit. I don't know what they meant, let it sit. The fees sit out there. But here's the situation. They put $52 for future escrow arrears. Go to confirmation. The trustee says, well, you got to put it in the plan or object. Okay, so if I object, it's going to cost a few thousand bucks to file the objection and maybe deal with the reply, even if they withdraw it. It's still going to cost money. So then what? Do I bill the debtors through the plan? Do I take from the unsecured creditors? And it's not that I have sympathy for the unsecured creditors, but just logically, either I take a step or we have to pay it. So I take the step of filing. Creditor's reaction is, okay, we'll withdraw it. Everybody go away. Well, what about the time I spent objecting to it? The point is they probably shouldn't have put it in in the first place. There were no other arrears. They've never missed a payment. So the idea of a peace offering, it's after I file the motion, then it's a peace offering because they don't want anybody to see what they're doing. They don't want you to look behind the curtain. The only other thing I would add is Rule 3002 wasn't even served on the debtors. So to say, well, they could have complained earlier, they're clueless. Again, the evidence would show, I could proffer it because I know what they testify. They got it. They filed bankruptcy. And then all of a sudden they started seeing the 950, thought it would go away because they're in bankruptcy. And you see their little handwritten notes on these statements. Whether they help or hurt, I can't sit there and white them out when I file with the court. So I just leave them on there. But you can see they're confused. They're circling the word bankruptcy and they're thinking, we're in bankruptcy. And so I guess this will go away because bankruptcy is taking care of it. But when it didn't, then they decided to pay it. And tragically, they went without medicine for a couple of months or part of their medicine so that they could pay it. And again, I only found out months later when they thought, well, what happens if we can't pay the trustee or pay it in full? And I asked why. And then it came back to this attorney's fees. But the bottom line is they shouldn't have added 950 to the statement. They did. It was coercive. The debtors paid it. They held it for more than half a year. And so there's two violations. And the only evidence before the court was the debtor saying, I paid it because we were afraid of losing our house. That's the only evidence. So it wasn't a voluntary payment. And with that, I would ask the court to reverse and remand so that an evidentiary hearing can be had. Thank you. Thank you for your good arguments. The matter is submitted.
judges: Brand, Gan, and Corbit